# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **JOAN A. CARMAN**<br>201 MARGE SCHOTT WAY<br>MAINEVILLE, OHIO 45039<br><br>AND<br><br>**DOUGLAS R. CARMAN**<br>6940 PLAINVIEW DRIVE<br>MASON, OHIO 45040<br><br>Plaintiffs,<br><br>v.<br><br>**ROLF GOFFMAN MARTIN LANG LLP**<br>SERVE: PAUL LANG, PARTNER<br>30100 CHAGRIN BOULEVARD, SUITE 350<br>CLEVELAND, OH 44124<br><br>AND<br><br>**W. CORY PHILLIPS**<br>30100 CHAGRIN BOULEVARD, SUITE 350<br>CLEVELAND, OH 44124<br><br>AND<br><br>**DAVID S. BROWN**<br>30100 CHAGRIN BOULEVARD, SUITE 350<br>CLEVELAND, OH 44124<br><br>Defendants. | **CASE NO: 1:23-CV-258**<br><br><br><br><br><br>**COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1. This action is brought by Plaintiffs, Joan A. Carman and Douglas R. Carman ("Plaintiffs") for actual, statutory, and civil penalties against the Defendants, Rolf Goffman Martin Lang LLP, W. Cory Phillips, and David S. Brown (collectively, "Defendants") for violations of

the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. (hereinafter, "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 15 U.S.C. §1691e(f) and 28 U.S.C. §1337.

3. Supplemental jurisdiction over state law claims arises under 28 U.S.C. §1367.

4. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202

5. Venue in this Judicial District is proper in that the Defendants transact business in this Judicial District and the conduct complained of occurred in this District.

## THE PARTIES

6. Plaintiffs, Joan A. Carman and Douglas R. Carman (collectively, "Plaintiffs"), are individuals residing in Warren County, Ohio.

7. Plaintiff, Joan A. Carman ("Joan") is an 88-year old woman who resides presently at a skilled nursing and rehabilitation home center owned and operated by Otterbein Maineville, LLC, an Ohio limited liability company whose principal place of business is in Warren County, Ohio.

8. Plaintiff, Douglas R. Carman ("Douglas") is Joan's adult son, and her duly appointed attorney-in-fact under a validly executed power of attorney.

9. Plaintiffs are "consumers" as defined by the FDCPA, 15 U.S.C. § 1692a(3).

10. Defendant, Rolf Goffman Martin Lang LLP (hereinafter, "Rolf") is an Ohio legal professional association of attorneys regularly engaged in the practice of collecting debts on behalf of the third parties by filing collection suits.

11. Defendants, W. Cory Phillips ("Phillips") and David S. Brown ("Brown") at all times relevant herein were and are attorneys employed by Rolf.

12. Defendants, Rolf, Phillips and Brown were and are "debt collectors" as defined by the FDCPA, 15 U.S.C. §1692a(6), because they regularly collect or attempt to collect debts owed or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

13. Defendant, Rolf, is a law firm engaged in the practice of collecting debts on behalf of the third parties by filing collection suits. Defendants, Phillips and Brown, are either principals or employees of Defendant, Rolf, and are debt collectors as defined at 15 U.S.C. § 1692a(6) because they regularly collect or attempt to collect debts owed, or asserted to be owed, to another.

14. According to the firm's website, Rolf represents long-term care organizations and holds itself out as a firm that is "well equipped to assist our clients in seeking to collect on bad debts."

15. According to Rolf's website, Defendants, Phillips and Brown focus their practice on assisting "clients with receivables, debt collection, revenue cycle and Medicaid entitlement and appeals."

16. At all times relevant herein, Rolf, Phillips and Brown represented Otterbein.

17. On or around May 2, 2022, Rolf, Phillips and Brown filed a debt-collection action against Plaintiffs wherein Defendants alleged that Plaintiffs were jointly and severally liable for a nursing home debt incurred for certain healthcare services, supplies, and room and board provided to Joan, who was admitted to Otterbein's facility on or around March 29, 2021.

3

18. Plaintiff, Doug Carman received said complaint by certified mail on May 5, 2022. Plaintiff, Joan Carman received said complaint sometime after it was mailed by ordinary mail on June 21, 2022.

19. A copy of the Complaint filed in the debt collection action is attached hereto at Exhibit A. Attached to the Complaint is a copy of Otterbein's Consent to Treat & Admission Agreement (the "Admissions Agreement"), which is a 1-page agreement with three pages of "Exhibits" containing additional terms.

20. The Admissions Agreement states that the "parties, intending to be legally bound, have signed this Agreement as of the date first above written." However, the Agreement fails to identify a date. Instead, the line for the date is blank.

21. The Agreement further provides that the Agreement is entered into "by and between Otterbein Maineville – SNF ("Otterbein"), Joan Carman ("Elder"), and the Representative(s) whose names appear below. Hereinafter, when capitalized, the term "You" and "Your" shall refer jointly and severally to the Elder and the Representative."

22. Although the term "Elder" expressly refers to Joan Carman, the term "Representative" does not expressly refer to any specific individual in the Agreement.

23. A second term, "Responsible Party," only appears once in the entire Agreement, appears over the execution line purportedly intended for the resident's signature, and confusingly reads "ELDER/Responsible Party."

24. However, Joan Carman's signature appears nowhere in the Agreement.

25. Instead, the purported signature of Douglas Carman appears under the words "ELDER/Responsible Party."

26. An electronic signature appears above the execution line for Otterbein and reads that it was "E-SIGNED by Brandy Glass on 2021-03-29 15:02:23 EDT."

27. On the day of her admission, Otterbein demanded that Douglas come immediately to Otterbein to sign documents before allowing Joan to be admitted.

28. Requesting a third party to sign an admission agreement in violation of 42 U.S.C. § 1395i-3(c)(5)(A)(ii), 42 U.S.C. 1396r(c)(5)(A)(ii), the Nursing Home Reform Act.

29. Although Joan was admitted to Otterbein on March 29, 2021, it did not file a Medicaid on her behalf until June 30, 2021.

30. Douglas provided Otterbein's Medicaid specialists with all of Joan's income and resource information, as well as the supporting documents necessary to enable Otterbein to file and complete a timely Medicaid application on Joan's behalf, and at all times cooperated with Otterbein to enable them to obtain Medicaid benefits on her behalf.

31. Further, at Otterbein's request, Douglas also signed a designation of authorized representative on May 26, 2021, in favor of Joe Slattery ("Slattery"), an Otterbein employee, and another designation on June 30, 2021, in favor of Charlene Norman ("Norman"), another Otterbein employee, to designate both Slattery and Norman as the sole persons authorized to apply for Medicaid benefits on Joan's behalf, communicate directly with the Departments of Job and Family Services, receive notices, and appeal any wrongful denial of benefits.

32. However, Otterbein twice failed to timely and properly appeal the denial of Joan's benefits, which benefits, would have been approved and would have paid for her care.

33. Had the Plaintiff properly presented Joan Carman's initial Medicaid application, Otterbein would have been paid in full for its services.

34. After Otterbein's second Medicaid application was denied, Douglas retained counsel to assist him with submitting a third Medicaid application for Joan.

35. During this process, Joan's house was sold, and the proceeds from the sale were placed into a Medicaid pooled trust created pursuant to 42 U.S.C. 1396p(d)(4)(C), 42 U.S.C. 1382b(e), R.C. 5163.21(F)(3)(a), the Omnibus Reconciliation Act of 1993, and the Collective Investment Fund Law, 12 CFR 9.18(c)(4) (the "Pooled Trust").

36. The express terms of the Pooled Trust provide that "it is the express purpose of this Trust to provide for the beneficiary's supplemental needs…"

37. Under federal and state law, certain of Joan's assets and resources were deemed exempt and transferred to the trust in order to maintain her eligibility for Medicaid benefits.

38. The creation of a pooled trust is a legally permissible means for qualifying a Medicaid applicant for benefits.

39. The creation of the Pooled Trust resulted in payment to Otterbein.

40. After the sale proceeds were transferred to the pooled trust, the Ohio Department of Medicaid determined that Joan was Medicaid eligible and approved her benefits.

41. Further, as authorized under Medicaid rules, Otterbein's past due balance is being paid as an unpaid medical expense through receipt of Joan's income every month.

42. Otterbein refused to acknowledge that Joan's approval for Medicaid, in part because of the Pooled Trust, would, and has resulted in payment to Otterbein.

43. Otterbein was notified that the pooled trust was established for the purpose of maintaining Joan's Medicaid eligibility. Otterbein advised it would discuss this with the Defendants.

6

44. Instead, Otterbein attempted to collect the outstanding debt directly from Douglas by mailing a billing statement to his home address dated May 1, 2022, for an alleged debt totaling $143,282.17.

45. The following day, Defendants, in an effort to collect Otterbein's debt, filed suit against Joan and Douglas, among others, to collect a debt to which it was not entitled, in the Warren County Court of Common Pleas, Case No. 22CV95111 (the "Collection Action").

46. The Complaint asserted the following causes of action: as to Joan, unjust enrichment (Count I), and fraudulent conveyance (Count IV); and as to Douglas, breach of contract (Count II), promissory estoppel (Count III), and civil conspiracy (Count V).

47. The Complaint also named Huntington National Bank as the Trustee of the Pooled Trust. Defendants alleged that Joan fraudulently transferred her assets to Huntington as Trustee, despite the clear language of the federal and state statutes authorizing her to create the trust in order to qualify for Medicaid and ensure payment to Otterbein.

48. The Complaint further alleged that Douglas "acted with malice" by helping Joan create the Pooled Trust and transfer her assets to Huntington as Trustee.

49. Defendants further alleged that Douglas executed the Admissions Agreement in his personal capacity (see Complaint, ¶8), and was identified in the Agreement as the "Representative."

50. Defendants further alleged that Douglas had an obligation to "pay for Joan's care out of Joan's funds or assets and income" and to "apply for and/or cooperate with the Medicaid process in obtaining Medicaid coverage for Joan Carman if her assets or resources were exhausted and/or insufficient to pay for the care and services provided by Plaintiff."

7

51. Defendants further alleged that it made a request for payment and that Joan and Douglas did not pay (see ¶¶14-15, Complaint).

52. Defendants also sought to collect interest at the rate of 18% per annum and attorney's fees based upon the terms of the Agreement.

53. The acts of Defendants are continuing as the Collection Action is still ongoing, including, but not limited to filing memoranda in opposition to Huntington's motions to dismiss and for summary judgment, continuing to claim the pooled trust is an unauthorized illegal act.

54. As a result of Defendants actions in filing and continuing to litigate this debt collection action, Huntington has charged Joan's trust account for attorney's fees in defending this false debt collection action. (See Exhibit B). Joan has suffered actual economic damages the amount of $22,617.25 which amount will increase as the debt collection lawsuit continues.

55. As a result, the Plaintiffs retained Pro Seniors, Inc to defend them in the debt collection lawsuit. Pro Seniors has incurred attorney time in defending the suit, which time is ongoing as the debt collection lawsuit continues.

56. Plaintiffs have also suffered fear, anxiety, worry and extreme emotional distress.

**COUNT I: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**

57. Plaintiffs restates, realleges and incorporates by reference each of the foregoing paragraphs herein.

58. Congress enacted the FDCPA in order to "eliminate the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006), citing 15 U.S.C. § 1692(a).

59. The FDCPA prohibits debt collectors from employing "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including misrepresenting "the character, amount, or legal status of any debt." 15 U.S.C. 1692e(2)(A).

60. A debt collector may not employ any "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. 1692f, and cannot collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. 1692f(1).

61. Further, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6).

62. The FDCPA applies to "attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. at 299, 115 S.Ct. 1489, 131 L.Ed.2d 395.

63. Defendants violated the FDCPA by taking actions against Plaintiffs to collect a debt, which include, without limitation:

- a) Engaging in "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," prohibited by 15 U.S.C.A. 1692d;

- b) A "false, deceptive, or misleading representation or means in connection with the collection of any debt," prohibited by 15 U.S.C. §1692e;

- c) "the false representation of the character, amount, or legal status of any debt," prohibited by 15 U.S.C. §1692e(2)(A);

- d) "the false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer," prohibited by 15 U.S.C. §1692e(7);

9

e) "the use of any false representation or deceptive means to collect or attempt to collect any debt," prohibited by 15 U.S.C. §1692e(10);

f) an "unfair or unconscionable means to collect or attempt to collect any debt," prohibited by 15 U.S.C. §1692f.

64. Specifically, Defendants violated the FDCPA by

(a) filing suit against Plaintiffs and asserting several, false legal theories having no basis in law or fact;

(b) seeking punitive damages against Plaintiffs for acts they were legally permitted to take;

(b) using a collection method which could not be legally taken;

(c) attempting to collect interest, late charges, and attorney's fees based on a void contract;

(e) filing suit against Douglas for civil conspiracy solely for the purpose of harassing him by alleging that he acted maliciously or with an intent to defraud;

(f) filing suit against Douglas in an attempt to impose guarantor liability upon him in violation of 42 U.S.C. 1395i-3(c)(5)(A)(ii), 42 U.S.C. 1396r(c)(5)(A)(ii) the Nursing Home Reform Act; and and Ohio Adm. Code 5160-3-02(C);

(g) Attempting to collect excessive, usurious interest at the rate of 18% per annum, late charges, attorney's fees and other amounts prohibited by law;

(h) Demanding payment from Douglas for amounts he does not owe;

(i) Threatening and taking groundless legal action against Douglas;

(j) Misrepresenting the character, amount, and legal status of the alleged indebtedness;

(k) Misrepresenting the legal consequences of nonpayment; and

(l) Making false statements and employing deceptive means to coerce payment from Douglas Carman;

65. As a direct and proximate result of these violations the Plaintiff suffered actual and statutory damages in an amount to be proved at trial.

10

66. The Defendants are therefore liable to the Plaintiffs for declaratory judgment that the Defendants' conduct violated the FDCPA, and for actual damages, statutory damages, costs, attorney's fees and such further relief which this Court deems appropriate.

**COUNT II: VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**

67. Plaintiffs reassert and reallege each and every allegation set forth above as if fully rewritten herein.

68. The above-described conduct was unfair, deceptive and / or unconscionable within the meaning of Ohio Rev. Code §§ 1345.02-.03.

69. As a direct and proximate result of these violations, Plaintiff was damaged in an amount to be determined at trial.

**WHEREFORE,** Plaintiffs, Joan A. Carman and Douglas R. Carman, respectfully request that judgment be entered against Defendants, Rolf Goffman Martin Lang LLP, W. Cory Phillips, David S. Brown, for the following:

A. Declaratory judgment that the conduct of Defendants' Rolf Goffman Martin Lang LLP, W. Cory Phillips, David S. Brown as outlined herein violated the FDCPA;

B. Actual damages suffered by the Plaintiffs, including statutory damages in the amount of $1,000.00 against each Defendant, Rolf Goffman Martin Lang LLP, W. Cory Phillips, David S. Brown, pursuant to 15 U.S.C. §1692k for violations of the FDCPA;

C. Compensatory economic, non-economic and statutory damages for violations of the OCSPA,

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k, 15 U.S.C. §1691e(d) and Ohio Rev. Code §1345.09;

E. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Miriam H. Sheline*
Miriam H. Sheline, Esq. (0018333)
Tracye T. Hill (0081864)
Pro Seniors, Inc.
7162 Reading Road, Suite 1150
Cincinnati, Ohio 45237
(513) 345-4160
*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable in this action.

*/s/ Miriam H. Sheline*
Miriam H. Sheline
Attorney for Plaintiffs